# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

RICK SCOTT, ROYCE D. KLEIN,
JAMES MORRIS, and THOMAS
MANGUM, on behalf of themselves and
all others similarly situated,

                Plaintiffs,

v.

UNITEDHEALTH GROUP, INC.,
UNITED HEALTHCARE SERVICES,
INC., UNITED HEALTHCARE
INSURANCE COMPANY, and UNITED
HEALTHCARE SERVICE LLC,

                Defendants.

Civ. No. 20-1570 (PJS/BRT)

**AMENDED CLASS
ACTION COMPLAINT**

Plaintiffs sue UnitedHealth Group, Inc. and its wholly-owned subsidiaries (collectively "United" or "Defendants") for breach of fiduciary duties under the Employee Retirement Income Security Act of 1974, as amended, ("ERISA").

## I.    NATURE OF THE ACTION

1.    United insures and administers healthcare plans, including employer group health plans, which are governed by ERISA (all such ERISA plans administered by United referred to herein as a "Plan" or "Plans"). This class action challenges United's taking of "cross-plan offsets" against the thousands of self-insured Plans it administers. Cross-plan offsetting occurs when United uses the assets from one Plan to recoup a financial loss from another, separate Plan. By engaging in cross-plan offsetting, United treats the thousands of

self-insured Plans it administers as one extremely large piggybank, moving hundreds of millions of dollars among its Plans each year to suit its own interests. Each cross-plan offset violates ERISA, and in most cases, the money ends up in United's own pocket.

2.      Employers provide healthcare benefits to employees as a form of compensation, with employees contributing wages in exchange for these benefits. Employees make such contributions provided that—pursuant to ERISA—the money will be used exclusively to pay Plan benefits and reasonable Plan administrative expenses. With its cross-plan offsets, however, United seizes this compensation and employee contributions from Plaintiffs and other Plan participants and uses this money for its own non-Plan purposes.

3.      ERISA requires that Plans be transparently and scrupulously administered, with Plan fiduciaries acting "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of providing benefits to [Plan] participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). ERISA also bans certain transactions which involve or benefit a Plan fiduciary like United. 29 U.S.C. § 1106. Finally, ERISA requires that Plans give participants notice of the reasons for a benefit denial and provide Plans with a full and fair review of denials, in accordance with procedures set forth in Plan documents and regulations promulgated by the Department of Labor ("DOL"). 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1.

4.      United breaches its fiduciary and statutory duties through the practice of cross-plan offsetting against self-insured Plans, because it takes cross-plan offsets only for

its own benefit. Indeed, cross-plan offsetting harms every other party involved in the offset transaction, including:

- Plans, whose assets are taken by United and used for non-Plan purposes, requiring that Plans use additional or replacement Plan assets to pay benefits;

- Plan participants, whose Plan contributions are taken by United for non-Plan purposes;

- Plan participants, whose particular benefits are seized by United and suffer the additional harm of being "balance billed" by their provider for non-payment, placing them in financial jeopardy;

- Employers and unions, whose monetary contributions to the Plan are taken and used for non-Plan purposes; and

- Providers, who do not get paid for providing covered healthcare services to Plan participants and beneficiaries.

This litany of harms would not exist if United simply administered claims in compliance with ERISA and used Plan assets for the "exclusive" purposes ERISA allows.

5.     Moreover, United does not inform Plan participants when Plan assets have been diverted from payment to a participant's healthcare provider for United's own purposes. United tells only *providers* that the claim is not being paid because it is subject to an offset, and falsely tells both the Plan and the participant that the claim was "paid." Likewise, United never reveals when cross-plan offsets result in direct, monetary gain to United. By disguising cross-plan offsets as "paid" claims and otherwise limiting Plan sponsors' access to data, United also frustrates Plan sponsors' ability to fulfill their oversight responsibilities under ERISA. United's duplicity and self-interest run afoul of ERISA at every turn and subvert ERISA's very purposes.

6.     Unlike this Court's prior case concerning United's cross-plan offsets, *Peterson v. UnitedHealth Group Inc.*, 242 F. Supp. 3d 834 (D. Minn. 2017), *aff'd*, 913 F.3d 769 (8th Cir. 2019), this action directly challenges *all* of United's cross-plan offsets as breaches of fiduciary duties under ERISA, rather than challenging some offsets as violations of the terms of particular plans. Here, Plaintiffs are self-insured Plan participants who seek relief from United's breaches of fiduciary duty on behalf of themselves, their Plans, and participants and beneficiaries in *all* self-insured Plans that are administered by United and subject to cross-plan offsetting.

7.     ERISA §§ 404 and 406 establish a bright line for Plan administrators like United: Plan assets may only be used to provide "benefits to participants and their beneficiaries" and to pay the "reasonable expenses of administering the plan." United cannot use Plan assets for non-Plan purposes, and especially not to enrich itself. United's rogue behavior should be enjoined, and United should be ordered to restore all Plan assets to all Plans and Plan participants whose assets were taken in furtherance of this scheme and to provide other appropriate relief to the Class, as provided by ERISA §§ 502(a)(2), (a)(3) and 409.

## II.    JURISDICTION AND VENUE

8.     **Subject Matter Jurisdiction:** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States, to wit, ERISA § 502(e), 29 U.S.C. § 1132(e), which gives federal courts exclusive jurisdiction over actions brought pursuant to Title I of ERISA.

9.    **Personal Jurisdiction:** This Court has personal jurisdiction over Defendants, because their headquarters are located in this District; they transact business in—and have significant contacts with—this District; and because the ERISA violations alleged herein arose out of policies issued and implemented in this District.

10.    **Venue:** Venue is appropriate in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. §  1132(e)(2), because United is headquartered in this District and because some or all of the decisions regarding cross-plan offsetting took place in this District.

### III.    PARTIES

#### A. <u>Plaintiffs</u>

11.    Plaintiff Rick Scott ("Mr. Scott") is an Ohio resident. He has been an employee of AT&T since 2011. At all times relevant to this action, Mr. Scott has been a participant in AT&T's employee healthcare benefit plan (the "AT&T Plan").

12.    Plaintiff Royce D. Klein ("Mr. Klein") is a Washington resident. He was employed by CenturyLink, Inc. from 2000 until June 19, 2020. At all times relevant to this action, Mr. Klein has been and continues to be a participant in CenturyLink's employee healthcare benefit plan (the "CenturyLink Plan").

13.    Plaintiff James Morris ("Mr. Morris") is a Nebraska resident. He was employed by CenturyLink from 1995 until he retired in March 2018. At all times relevant to this action, Mr. Morris has been and continues to be a participant in the CenturyLink Plan.

14.     Plaintiff Thomas Mangum ("Mr. Mangum") is a Georgia resident. He has been an employee of PetSmart since 2019. Since that time, Mr. Mangum has been a participant in PetSmart's employee healthcare benefit plan (the "PetSmart Plan").

15.     The AT&T Plan, the CenturyLink Plan, and the PetSmart Plan (collectively "Plaintiffs' Plans") are among the health plans administered by United and governed by ERISA.

16.     Plaintiffs bring this action on behalf of themselves and their Plans to recover money unlawfully taken from their Plans by United.

**B. Defendants**

17.     Defendant UnitedHealth Group, Inc. is a Minnesota corporation with its principal place of business in Minnetonka, Minnesota.

18.     Defendant United HealthCare Services, Inc. ("Services, Inc.") is a Minnesota corporation with its principal place of business in Minnetonka, Minnesota. Services, Inc. is a wholly owned subsidiary of UnitedHealth Group, Inc. and is in the business of administering benefits offered by self-insured health plans.

19.     Defendant UnitedHealthcare Insurance Company ("Insurance Co.") underwrites insurance and administers healthcare plans. Insurance Co. is a wholly owned subsidiary of UHIC Holdings, Inc., which is a wholly owned subsidiary of Services, Inc.

20.     Defendant United HealthCare Service, LLC ("Service, LLC") is a wholly owned subsidiary of Insurance Co. and is in the business of administering benefits offered by plans.

6

21.     Through Insurance Co., Services, Inc., Service, LLC, and other wholly owned entities and/or affiliates, United insures and administers healthcare plans, including employer group health plans, which are governed by ERISA, including Plaintiffs' United Plans and Plans of the Class.

## IV.   FACTUAL ALLEGATIONS

### A. <u>Plaintiffs are Plan Participants</u>.

22.     At all times relevant to this action, Mr. Scott has been a participant in the AT&T Plan. The AT&T Plan provides covered healthcare benefits to Mr. Scott.

23.     At all times relevant to this action, Mr. Scott has been a member of the Communications Workers of America ("CWA"), Local 2009. The healthcare coverage provided by the AT&T Plan was obtained for Mr. Scott and other AT&T Plan participants through collective bargaining between AT&T and the CWA.

24.     Mr. Scott contributes to the AT&T Plan through payments that are withheld from his compensation for that purpose. His contributions are $55.00 per paycheck, or $1,430 per year over 26 paychecks.

25.     Mr. Scott made contributions for his healthcare benefits with the agreement and understanding that they would be used solely to provide healthcare benefits to AT&T Plan participants and their beneficiaries and to defray reasonable expenses of administering the AT&T Plan, in accordance with ERISA.

26.     Mr. Scott relies upon his collectively bargained-for AT&T Plan to pay the bulk of his healthcare expenses. To the extent that United withholds payment for a covered service from one of Mr. Scott's medical providers because of a cross-plan offset, Mr. Scott

may be indebted to that provider for the amount of that withheld payment. This liability to the provider caused by United's cross-plan offset is referred to as "balance bill liability" because the provider can bill the patient for the invoice balance not paid by United.

27.    Mr. Scott made his financial contributions to the AT&T Plan pursuant to the agreement and understanding that United had contractual obligations to administer his Plan according to ERISA and Plan terms.

28.    Mr. Scott made his financial contributions to the AT&T Plan pursuant to the agreement and understanding that United had fiduciary duties to administer his Plan according to ERISA and Plan terms, and to utilize his financial contributions for the sole purpose of providing benefits under the Plan.

29.    At all times relevant to this action, Mr. Klein has been a participant in the CenturyLink Plan. The CenturyLink Plan provides covered healthcare benefits to Mr. Klein.

30.    Mr. Klein contributes to the CenturyLink Plan through payments that are withheld from his compensation for that purpose. His contributions are $187 per month, or $2,244 annually.

31.    Mr. Klein stopped working for CenturyLink as of June 19, 2020 due to the economic fallout from COVID-19. He and CenturyLink agreed to a severance package which includes continued coverage by the CenturyLink Plan pursuant to the Consolidated Omnibus Budget Reconciliation Act ("COBRA"). The severance agreement provides that Mr. Klein will continue to receive coverage under the CenturyLink Plan for eight (8) months until February 2021 for the same monthly contribution of $187, if Mr. Klein

8

remains unemployed. At that time, he may choose to retain coverage under the Plan for an additional ten (10) months for an increased monthly contribution.

32.     Mr. Klein made contributions for his healthcare benefits with the agreement and understanding that they would be used solely to provide healthcare benefits to CenturyLink Plan participants and their beneficiaries and to defray reasonable expenses of administering the CenturyLink Plan, in accordance with ERISA.

33.     Mr. Klein relies upon the CenturyLink Plan to pay the bulk of his healthcare expenses. To the extent that United withholds payment for a covered service from one of Mr. Klein's medical providers because of a cross-plan offset, Mr. Klein may incur balance bill liability for the charges not paid by United.

34.     Mr. Klein made his financial contributions to the CenturyLink Plan pursuant to the agreement and understanding that United had contractual obligations to administer his Plan according to ERISA and Plan terms.

35.     Mr. Klein made his financial contributions to the CenturyLink Plan pursuant to the agreement and understanding that United had fiduciary duties to administer his Plan according to ERISA and Plan terms, and to utilize his financial contributions for the sole purpose of providing benefits under the Plan.

36.     At all times relevant to this action, Mr. Morris has been a participant in the CenturyLink Plan. The CenturyLink Plan provides covered healthcare benefits to Mr. Morris and his family.

37.     Mr. Morris worked for CenturyLink from 1995 until he retired in March 2018. While employed, Mr. Morris contributed to the CenturyLink Plan through payments

that were withheld from his compensation for that purpose. His contributions were approximately $400 per month, or $4,800 annually. Upon retirement, Mr. Morris has continued health coverage for himself and his family under the CenturyLink Plan. Currently, Mr. Morris pays approximately $1,187.00 per month, or $14,244 per year.

38.     Mr. Morris made contributions for his healthcare benefits with the agreement and understanding that they would be used solely to provide healthcare benefits to CenturyLink Plan participants and their beneficiaries and to defray reasonable expenses of administering the CenturyLink Plan, in accordance with ERISA.

39.     Mr. Morris relies upon the CenturyLink Plan to pay the bulk of his and his family's healthcare expenses. To the extent that United withholds payment for a covered service from one of Mr. Morris' medical providers because of a cross-plan offset, Mr. Morris may incur balance bill liability for the charges not paid by United.

40.     Mr. Morris made his financial contributions to the CenturyLink Plan pursuant to the agreement and understanding that United had contractual obligations to administer his Plan according to ERISA and Plan terms.

41.     Mr. Morris made his financial contributions to the CenturyLink Plan pursuant to the agreement and understanding that United had fiduciary duties to administer his Plan according to ERISA and Plan terms, and to utilize his financial contributions for the sole purpose of providing benefits under the Plan.

42.     Mr. Mangum has been a participant in the PetSmart Plan since May 2019. The PetSmart Plan provides covered healthcare benefits to Mr. Mangum and his family.

43.     Mr. Mangum contributes to the PetSmart Plan through payments that are withheld from his compensation for that purpose. His contributions are approximately $300 per paycheck, or $7,800 yearly, over 26 paychecks.

44.     Mr. Mangum makes contributions for his healthcare benefits with the agreement and understanding that they will be used solely to provide healthcare benefits to PetSmart Plan participants and their beneficiaries and to defray reasonable expenses of administering the PetSmart Plan, in accordance with ERISA.

45.     Mr. Mangum relies on the PetSmart Plan to pay the bulk of his and his family's healthcare expenses. To the extent that United withholds payment for a covered service from one of Mr. Mangum's medical providers because of a cross-plan offset, Mr. Mangum may incur balance bill liability for the charges not paid by United.

46.     Mr. Mangum made his financial contributions to the PetSmart Plan pursuant to the agreement and understanding that United had contractual obligations to administer his Plan according to ERISA and Plan terms.

47.     Mr. Mangum made his financial contributions to the PetSmart Plan pursuant to the agreement and understanding that United had fiduciary duties to administer his Plan according to ERISA and Plan terms, and to utilize his financial contributions for the sole purpose of providing benefits under the Plan.

48.     The contributions Plaintiffs made to Plaintiffs' Plans became Plan assets once segregated from their paychecks. *See* 29 C.F.R. § 2510.3-102.[1] Thus, Plaintiffs' contributions became Plan assets when they were paid and their contributions to their respective Plans were withheld.

49.     Employee contributions to self-insured or self-funded health insurance plans are plan assets and must be held in trust. *See* 29 U.S.C. § 1103(a); *see also* Department of Labor, *Understanding Your Fiduciary Responsibilities Under a Group Health Plan*, at 1 n.1, (Sept. 2019), https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/ resource-center/publications/understanding-your-fiduciary-responsibilities-under-a-group -health-plan.pdf.

50.     Plan assets are sacrosanct under ERISA. Indeed, the Employee Benefits Security Division of the DOL treats the misuse of participant contributions seriously and partners with the Department of Justice to undertake criminal enforcement actions to protect participant contributions to their health and retirement plans.[2]

---

[1] The Code of Federal Regulations states that "the assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution or repayment of a participant loan to the plan, as of the earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets." As such, employee contributions withheld from an employee's paycheck are plan assets.

[2] *See* U.S. Department of Labor, Employee Benefits Security Administration, *Contributory Plans Criminal Project*, (April 2013), https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/fact-sheets/cpcp.pdf (detailing joint criminal prosecutions between the DOL and the Department of Justice for misuse of health and retirement plan contributions, and condemning "[u]nscrupulous service providers" which "target contributory benefit plans for their personal profit.").

**B.** **United Seizes Employer and Employee Contributions When It Takes Cross-Plan Offsets.**

51.     Plans administered by United fall into two funding categories: self-insured Plans and fully-insured Plans. Self-insured Plans fund their own claim payments with money from the Plan sponsor (i.e., the employer) and contributions from Plan participants as required. United pays fully-insured claims with money from one or more insurance subsidiaries pursuant to insurance contracts purchased by Plans using, *inter alia*, a combination of employer and employee contributions.

52.     This class action seeks relief only on behalf of participants in self-insured Plans, who contributed their own money for the exclusive purpose of providing benefits under their respective healthcare Plans.

53.     To fund self-insured Plan benefit payments, United and a Plan sponsor establish an employer-dedicated "zero-balance" bank account. The account is called a "zero-balance" account because it only exists to fund Plan benefit payments and has a zero balance at other times. United is given access to these customer-dedicated accounts for the sole purpose of using the money in the account to fund Plan benefit payments.

54.     Upon information and belief, there are two ways in which United gains access to Plan assets in these customer-dedicated bank accounts. Under the "push" method, Plan sponsors transfer Plan assets after receiving a request for funds from United. Under the "pull" method, United may transfer money from the account as needed to fund the payment of Plan benefits, without prior Plan sponsor approval.

55.     Plan assets, including employee contributions, are deposited in these customer-dedicated accounts. These deposits are made for the exclusive purpose of providing benefits under the Plan and defraying reasonable administrative expenses.

56.     The funds in these customer-dedicated bank accounts constitute Plan assets to be used exclusively to pay healthcare benefits under the terms of the Plan or to defray reasonable expenses incurred in administering the Plan.

57.     United acts as a third-party administrator for self-insured Plans and as an administrator for fully-insured plans. It is United's regular practice and business model as administrator to: (a) accept benefit claims submitted directly to United by providers on behalf of Plan participants; (b) process claims to determine if the services rendered by the provider were covered by applicable Plans; and (c) pay benefits due under the respective Plan directly to participants' providers. On information and belief, United is appointed as a named fiduciary with respect to claims administration for its Plans.

58.     Cross-plan offsetting occurs when United asserts that it erroneously paid a provider, or that it paid too much to a provider under the terms of a Plan and seeks repayment directly from the provider. If the provider and United resolve the dispute, the issue is over.

59.     When providers do not agree with United that they were overpaid, instead of resolving such payment disputes on their merits in negotiation or in an appropriate forum, United unilaterally withholds partial or entire payments unquestionably owed to the provider for providing covered services to *different* Plan participants covered under *different* Plans. This is cross-plan offsetting.

C. **United Has Taken and Continues to Take Cross-Plan Offsets Against Plaintiffs' Plans.**

60.     The AT&T Plan and CenturyLink Plan were among the Plans at issue in *Peterson*. In that case, United admitted to taking cross-plan offsets. *See Peterson*, 14-cv-2101, ECF No. 81, Defendants' Answer to Plaintiff's Second Amended Class Action Compl., ¶ 5 (D. Minn. July 15, 2015). United further stipulated that the AT&T Plan and CenturyLink Plans had been subjected to cross-plan offsets. *See Peterson*, 14-cv-2101, ECF No. 120-1, Exhibit A to Third Stipulation Regarding Phase I Proceedings at 3, 5 (D. Minn. Mar. 23, 2016).

61.     *Peterson* was voluntarily dismissed in 2019. During and since that case, United has continued to take cross-plan offsets at an enterprise level, "across employer groups" and plan types, according to an online description of its cross-plan offsetting practice, what United refers to as its "Bulk Recovery Process." *See* United Healthcare, *Bulk Recovery Process Description*, at 1, https://www.uhc.com/content/dam/uhcdotcom/en/ B2B-Newsletters/b2b-pdf/broker/UnitedHealthcare_Bulk_Recovery_Process_ Description.pdf, attached as Exhibit A to Plaintiffs' Amended Complaint. United continues to take offsets "from any payment made to that provider *and are not related to the member claims being paid in the payment*." *Id.* (emphasis added).

62.     United has also published data confirming that it has aggressively increased the practice of cross-plan offsetting. *See, e.g.*, UnitedHealthcare, *January 2019 Talking Points Regarding Overpayment Bulk Recovery Process* (Jan. 1, 2019), attached as Exhibit B to Plaintiffs' Amended Complaint; UnitedHealthcare, *October 2019 Talking Points*

*Regarding Overpayment Bulk Recovery Process* (Oct. 23, 2019), attached as Exhibit C to Plaintiffs' Amended Complaint; UnitedHealthcare, *June 2020 Talking Points Regarding Overpayment Bulk Recovery Process*, (June 1, 2020), attached as Exhibit D to Plaintiffs' Amended Complaint; UnitedHealthcare, *September 2020 Talking Points Regarding Overpayment Bulk Recovery Process* (Sept. 2020), attached as Exhibit E to Plaintiffs' Amended Complaint (collectively, the "Talking Points"). United reported that in 2018, it used cross-plan offsets to recover 53% of asserted overpayments by self-insured plans and 60% of asserted overpayments by fully-insured plans. *See* Ex. B at 4; Ex. C at 4. In 2019, those numbers jumped dramatically, to 81% and 91%, increases of more than 50%. *See* Ex. D at 5.

63.     The Talking Points also show that United used cross-plan offsets to seize $1.286 billion in Plan assets in 2018. *See* Ex. B at 4; Ex. C at 4. That number surged in 2019 to $1.354 billion, an increase of nearly seventy million dollars. *See* Ex. D at 5. Thus, by all measures, United has enlarged the scope and size of its cross-plan offset practice since *Peterson* was dismissed.

64.     In recent years, United has amended Plan documents for some of its Plans to include language that purports to authorize cross-plan offsets. United describes this language as creating an "overpayment recovery pool" that allows United "to pool payments to health care providers" and to recover asserted overpayments "out of those pooled payments." ECF No. 25 at 5.

65.     For example, the Summary Plan Description ("SPD") for Mr. Mangum's PetSmart Plan (attached as Exhibit F to Plaintiffs' Amended Complaint), contains a "Refund of Overpayments" section which states:

> If [a] refund is due from a person or organization other than the Covered Person, the Plan may recover the overpayment by reallocating the overpaid amount to **pay**, in whole or in part, (i) future Benefits that are payable in connection with services provided to other Covered Persons under the Plan; or (ii) future **benefits** that are payable in connection with services provided to persons **under other plans** for which UnitedHealthcare makes payments, pursuant to a transaction in which the Plan's overpayment recovery rights are assigned to such other plans in exchange for such plans' remittance of the amount of the reallocated payment. The reallocated payment amount will equal the amount of the required refund or, if less than the full amount of the required refund, will be deducted from the amount of refund owed to the Plan.

Ex. F at 114 (emphasis added).

66.     Upon information and belief, United has caused similar "pay benefits under other plans" language to be included in many SPDs (or other Plan documents) for Plans for which it serves as claims administrator, including PayPal, Walmart, Intuit, Princeton University, New York University, Avnet, Inc., Lake Forest College, NXP USA, Inc., and The New School.

67.     In fact, United deems any Plan to be "automatically included in the Bulk Recovery Process" whenever its SPD contains such "pay benefits under other plans" language. Ex. E at 1.

68.     United may only carry out provisions of a Plan document "insofar as such documents and instruments are consistent with" the protection of employee benefit rights

provisions of ERISA, including the fiduciary duties imposed by ERISA. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

69.     There are no provisions in ERISA which permit Plan assets to be used to pay benefits under other Plans.

70.     There are no provisions in ERISA which permit Plan assets to be used for an "overpayment recovery pool."

71.     There are no ERISA regulations promulgated by the Department of Labor which permit Plan assets to be used to pay benefits under other Plans.

72.     There are no ERISA regulations promulgated by the Department of Labor which permit Plan assets to be used for an "overpayment recovery pool."

73.     United's use of Plan assets to "pay benefits under other plans" is inconsistent with and contrary to ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), which requires that fiduciaries like United act "solely" in the interests of Plan participants, and "for the exclusive purpose of providing benefits to [Plan] participants and other beneficiaries." When United uses the assets of Plaintiffs' Plans to "pay benefits under other plans," it is not acting "solely" in the interests of the participants in Plaintiffs' Plans, but instead is acting in the interests of other Plans, or in the interest of United.

74.     Similarly, when United uses the assets of Plaintiffs' Plans to "pay benefits under other plans," it is not serving the "exclusive purpose" of providing benefits to participants in Plaintiffs' Plans, but instead is serving the interest of other Plans, or the interest of United.

75.     Any Plan document provision, like that contained in the PetSmart Plan, that purports to authorize the use of Plan assets to "pay benefits under other plans" through cross-plan offsets, is void and unenforceable as a matter of law.

76.     Upon information and belief, based on recent filings the Plaintiffs' Plans have made with the DOL, the AT&T Plan, Century Link Plan, and PetSmart Plan combined have many thousands of Plan participants, who receive covered services from different healthcare providers every year. These large numbers of participants and providers create numerous and repeated opportunities for United to take cross-plan offsets against Plaintiffs' Plans.

77.     Upon information and belief, United has taken cross-plan offsets against the AT&T Plan and CenturyLink Plan during the last six years, and continues to take cross-plan offsets against the PetSmart Plan and other Plans whose Plan documents now include "pay benefits under other plans" language which United claims authorizes cross-plan offsets.

78.     Upon information and belief, evidenced by the "Talking Points," United maintains detailed data about its cross-plan offsets, including data identifying Plans whose money was diverted to offset asserted overpayments by other Plans; the dates and amounts of offsets; and the providers to whom Plaintiffs and putative Class members intended their healthcare benefits to be paid. However, this data is not made available to the fiduciaries of the self-insured Plans administered by United.

79.    Upon information and belief, and as evidenced by the Talking Points, United can readily identify all cross-plan offsets taken against Plaintiffs' Plans in the six years preceding the filing of this Amended Complaint.

80.    In *Peterson*, United asserted under oath in June 2019 that it would cost $920,000 and more than 8,000 hours of work to "extract and collect" cross-plan offset data. *See Peterson*, 14-cv-2101, ECF No. 257, Defs.' Opp. to Pls.' Mot. to Compel Response to Phase II Doc. Requests, at 12 (June 6, 2019); *see generally id*. ECF No. 259, Decl. of M. Santoro ISO Defs.' Opp. to Pls.' Mot. to Compel (June 6, 2019); *id*. ECF No. 260, Decl. of M. Laubsted ISO Defs.' Opp. to Pls.' Mot. to Compel (June 6, 2019). The January 2019 Talking Points indicate that this data already existed when United made those assertions. *See* Ex. B. Any claims by United in this case that it does not have detailed cross-plan offset data should be rejected.

### D. United's Cross-Plan Offsets Harm Plan Sponsors and Plan Participants.

81.    United's cross-plan offsets harm every party involved in the offset transaction except United. Plans suffer a financial loss, because cross-plan offsets cause Plan assets to be used for purposes other than providing healthcare benefits to Plan participants or defraying reasonable administration expenses. *See* ERISA § 404(a).

82.    The losses suffered by Plaintiffs' Plans due to United's cross-plan offsets meant there was less money in the Plans to pay healthcare benefits to Plan participants— even though participants' contributions were intended for use solely by the Plan. Because of those losses, the Plans had to use additional or replacement Plan assets to pay benefits.

83.     If this action is successful, Plaintiffs' Plans will have the money taken by United in cross-plan offsets restored and used for its intended purposes, i.e., benefits to Plan participants.

84.     Plan participants are harmed by cross-plan offsets because the contributions they make to the Plan, which become Plan assets when segregated from participants' paycheck, 29 C.F.R. § 2510.3-102(a)(1), are taken by United and used for non-Plan purposes, rather than for the "exclusive" purpose of providing healthcare benefits to Plan participants or defraying reasonable administration expenses. *See* ERISA § 404(a).

85.     If this action is successful, Plaintiffs and other Plan participants will have their contributions restored to their Plans and used for their intended purposes, *i.e.*, benefits to Plan participants.

86.     Plan participants like Mr. Scott who obtain Plan benefits through collective bargaining are harmed by cross-plan offsets, because offsets deprive those participants of the benefit of that bargain.

87.     Plan participants like Mr. Klein, Mr. Morris, and Mr. Mangum, who obtain Plan benefits as part of their employment compensation, are harmed by cross-plan offsets because offsets deprive those participants of the benefit of their employment bargain.

88.     Plan participants and beneficiaries are harmed by cross-plan offsets, because offsets reduce the Plan assets available to provide covered healthcare benefits to them.

89.     Further, Plan participants and beneficiaries whose benefits are misappropriated by United for a cross-plan offset are harmed because they are denied

benefits to which they are entitled and are not given the opportunity for full and fair review of the denials.

90.     In addition, Plan participants and beneficiaries are placed in financial jeopardy with regards to charges United withholds from their provider because the cross-plan offset creates balance bill liability. As a result, cross-plan offsetting can also negatively affect the credit score of affected participants and beneficiaries.

91.     If this action is successful and contributions are restored to the Plans and used for their intended purpose, any existing balance bill liability caused by cross-plan offsetting will be extinguished.

92.     If this action is successful and United is enjoined from taking cross-plan offsets, Plan participants will avoid any future balance bill liability caused by cross-plan offsetting.

93.     Providers are harmed when United engages in cross-plan offsetting, because they are not paid for providing services that were unquestionably covered by the Plan. That is, only payable claims are subjected to cross-plan offsets. This injury to the provider also adversely affects participants and their beneficiaries, because unpaid claims strain the doctor-patient relationship.

94.     Those who contribute to Plan assets—employers, unions and Plan participants—are all harmed because their contributions are hijacked by United and used to resolve United's disputed overpayments. That was neither the intended nor lawful purpose of their contributions. As a result of that loss of contributions, additional or replacement Plan assets are used to fund the payment of benefits.

95.     Plan fiduciaries are harmed by United's practice of cross-plan offsetting, because United disguises offsets as "paid" claims. This failure to provide transparency frustrates and impedes the ability of Plan fiduciaries to perform their oversight responsibilities.

**E.  United Benefits from Cross-Plan Offsets.**

96.      While healthcare plans, participants, beneficiaries, and providers suffer harm due to offsets, United reaps benefits from the same transactions. These benefits vary, depending on the type of cross-plan offset: all cross-plan offsets benefit United, but some benefit United more than others. These benefits are explained below.

97.     As described above, the Plans that United administers fall into two funding categories: self-insured Plans (which pay their own claims) and fully-insured Plans (where United pays all claims pursuant an insurance contract purchased by the Plan sponsor).

98.     United's self-insured business makes up the majority of its healthcare insurance practice. In 2017, 78% of all claim payments processed by United came from self-insured Plans; only 22% of claim payments come from fully-insured Plans. *See Peterson*, 242 F. Supp. 3d at 836.

99.     Fully-insured Plans pay claims with United's own money. When United makes an asserted overpayment under a fully-insured Plan, it suffers an actual financial loss of its own money.

100.    Self-insured Plans enter into Administrative Services Only ("ASO") agreements with United, which set forth the terms under which United administers a Plan, in exchange for certain fees. To administer self-insured Plans, United pays claims using

Plan assets made available to United by Plan sponsors, typically using a dedicated bank account that contains both employer and employee contributions. The employer sponsoring a self-insured Plan is therefore ultimately responsible for paying the healthcare services covered by the Plan and United is responsible for administering the Plan according to its terms.

101.    Upon information and belief, most ASOs between United and self-insured Plan sponsors impose financial penalties and/or liability on United for wrongful disbursement and/or mismanagement of Plan assets. For starters, most, if not all, ASOs require United to repay the erroneous overpayment to the Plan. In addition, many ASOs calculate United's compensation as a function of its claim processing efficiency, a measure which goes down with overpayments. As a result, the ASO imposes financial penalties on United when it makes an overpayment under a self-insured Plan.

102.    In addition, various state statutes and the common law impose obligations on United to repay Plans for any erroneous payments. When United makes an asserted overpayment under any Plan, it is subject to legal and financial exposure.

103.    With this background, United's self-interest is clear. For starters, because 22% of its business is fully-insured, United is the largest single payor among the Plans it administers and thus benefits the most from any cross-plan offsetting. *See Peterson*, 242 F. Supp.3d at 844 ("As the single biggest payor of claims, United's personal stake in cross-plan offsetting dwarfs that of any self-insured plan.").

104.    United's self-interest manifests itself in other ways. United operates at the zenith of its self-interest when a fully-insured Plan makes an alleged overpayment of

24

United's money and United offsets its loss using the funds from a self-insured Plan. In other words, without permission, authority, or notification, United takes a self-insured Plan's money and keeps it. This misappropriation is a gross breach of fiduciary duties, contrary to every accepted norm for fiduciary behavior. It is also patently unlawful under ERISA.

105.    This type of cross-plan offset is not rare; in *Peterson*, the court found that 100% of all cross-plan offsets benefited United. *See Peterson*, 242 F. Supp.3d at 844 (noting that "every offset that United orchestrated did not just benefit a different, unrelated plan, but benefited United itself."). This extreme bias towards United is even more remarkable given that, as of 2017, only 22% of United's plans were fully-insured. *See id.* at 836. In other words, United prioritizes offsets to itself, at the expense of the approximately 78% of plans that are not fully-insured by United.

106.    This rapacious approach to Plan administration suggests that United's cross-plan offsets are systematically stacked against the interests of Plans and Plan participants and beneficiaries, in violation of United's fiduciary duties. *See Peterson*, 242 F. Supp. 3d at 840 ("every one of the cross-plan offsets at issue in this litigation put money in United's pocket, and most of that money came out of the pockets of the sponsors of self-insured plans.").

107.    Even a cross-plan offset that does not put money directly into United's pocket serves United's interests, because offsets relieve United of any financial harm associated with making an asserted overpayment, including liability to repay the overpayment, or the loss of administration fees for unsuccessful claims administration.

**F. United Conceals Its Cross-Plan Offsets.**

108.    United also cloaks its cross-plan offsets in secrecy: it never tells Plans, Plan sponsors, or participants that it has used Plan assets for non-Plan purposes, and never tells Plans that it keeps Plan money collected through offsets. United makes it virtually impossible for other Plan fiduciaries to fulfill their duties to monitor United's activities by limiting Plans' ability to audit claims administration, and further limiting Plans' ability to access information about claims payment. This secrecy is directly contrary to ERISA's fiduciary requirements and its claims regulation.

109.    ERISA § 503, 29 U.S.C. § 1133, requires United, as Plan claims administrator, to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). ERISA § 503 also requires that United afford any such participant the opportunity for "a full and fair review" of any denial. *Id.* 1133(2).

110.    The DOL implemented ERISA § 503 by promulgating 29 C.F.R. § 2560.503-1 (the "ERISA Claims Regulation"). The ERISA Claims Regulation requires United to give participants certain information and rights any time it makes "[a] denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit." *See* 29 C.F.R. §§ 2560.503-1(g) (required content of notice) & (m)(4)(1) (definition of "adverse benefit determination" for which notice is required).

111.    United's cross-plan offsets are adverse benefit determinations under the ERISA Claims Regulation. Each time United takes a cross-plan offset, it makes "a denial,

reduction, or . . . failure to provide or make payment in whole or in part" of a claim. 29 C.F.R. § 2560.503–1(m)(4)(i).

112.    United purports to fulfill its responsibilities under ERISA § 503 and the ERISA Claims Regulation by sending participants an Explanation of Benefits ("EOB") describing the results of United's claims adjudication and any remaining financial obligation the participant has to her healthcare provider.

113.    When United takes a cross-plan offset, the EOB it sends the participant falsely states that the claim was "paid" with Plan assets. Importantly, the EOB does not disclose that (i) the claim was not paid in full; (ii) the participant's provider did not receive payment for services approved by the Plan; (iii) Plan assets were used for a non-Plan purpose; (iv) United received the proceeds of the cross-plan offset; or (v) the participant may incur balance bill liability. Nor does the EOB disclose that the participant has the right to appeal United's offset.

114.    These falsehoods and omissions are designed to conceal the fact that United took a cross-plan offset, breached its fiduciary duties, and used Plan assets for non-Plan purposes.

115.    A Plan fiduciary has a duty to monitor the conduct of the third parties it hires to administer aspects of a Plan. This continuing and ongoing duty requires a Plan fiduciary to review a Plan's expenditures and administrative costs.

116.    United also conceals the existence of cross-plan offsets from Plans and Plan sponsors. Upon information and belief, the regular banking and other reports United sends to Plans and Plan sponsors who review Plan activity do not disclose United's cross-plan

offsets. Instead, United lists cross-plan offsets in such reports as "paid" claims, even though these benefits were not paid to the subject provider and were used for non-Plan purposes.

117.    The only party who is informed that a payment is being reduced or denied as the result of a cross-plan offset is the provider, who is not paid. However, providers have no rights under ERISA to seek relief directly. Thus, the only party given the truth about United's cross-plan offset is the only party with no recourse.

## V.    ERISA ALLEGATIONS

### A. ERISA Plans and Plan Assets

118.    ERISA defines a "welfare plan" as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained *for the purpose of providing for its participants or their beneficiaries*, through the purchase of insurance or otherwise . . . medical, surgical, or hospital care or benefits . . ." 29 U.S.C. §1002(1)(A) (emphasis added).

119.    Plaintiffs' Plans and the Plans of the Class were established by employers for the purpose of providing health benefits for participants and their beneficiaries, as a form of employee compensation. Each Plan is subject to and governed by ERISA.

120.    The assets of Plaintiffs' Plans, and all Plans administered by United, include contributions from employers and employees which are made for the sole purpose of providing health benefits to Plan participants and beneficiaries. *See* 29 U.S.C. § 1104(a) (plans shall be administered "solely in the interest of participants and beneficiaries" and "for the exclusive purpose of" providing benefits and defraying reasonable expenses).

121.   "The Secretary of Labor has repeatedly defined 'plan assets' consistently with 'ordinary notions of property rights,' including in the definition any funds in which a plan has obtained a 'beneficial interest.'" *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 647 (8th Cir. 2007) (collecting DOL opinions defining plan assets); *see also* 29 C.F.R. § 2510.3–102(a) (regulation defining plan assets).

122.   Once assets are contributed by an employer to pay Plan benefits, they are Plan assets under ordinary notions of property law.

123.   Participant contributions to health benefit plans generally become Plan assets on the earliest date on which they can reasonably be segregable from the employer's general assets. 29 C.F.R. § 2510.3102(a)(1).

124.   Plan assets may be used only and "exclusively" to provide benefits and to pay reasonable administrative services, as set forth in ERISA. *See* 29 U.S.C. § 1002(1) (Plans established "for the purpose of providing" benefits); 29 U.S.C. § 1104(a)(1)(A) ("a fiduciary shall discharge his duties with respect to a plan *solely* in the interest of the participants and beneficiaries and . . . for the *exclusive* purpose of . . . providing benefits" and paying reasonable administration expenses) (emphasis added).

## B. Plan Participants Have Interests and Rights Respecting Their Plans and Plan Assets.

125.   United is obligated to Plaintiffs and all members of the putative Class to administer their Plans according to ERISA and Plan terms.

126.   Plan participants who contribute assets to their Plans, like Plaintiffs, have a concrete interest in having Plan assets managed by fiduciaries who "discharge [their] duties

with respect to a plan solely in the interest of the participants and beneficiaries." *See* 29 U.S.C. §1104(a)(1).

127.    Plan participants, like Plaintiffs, have a legally cognizable interest in ensuring that Plan assets are used exclusively for the purposes set forth in ERISA. *See* 29 U.S.C. §1104(a)(1)(A)(i)–(ii) (plan assets to be used exclusively to pay benefits and defray reasonable administrative expenses).

128.    Plan participants, like Plaintiffs, have a concrete and legally cognizable interest in ensuring that their contributions—which were made pursuant to the agreement and understanding that their money would only be used to pay benefits and defray expenses—are not taken and used by United for other reasons.

129.    Plan participants, like Plaintiffs, have a statutory right under ERISA to bring suit to enforce the fiduciary duties imposed on Plan fiduciaries such as United. *See* 29 U.S.C. § 1132(a)(2) (participant or beneficiary may sue to obtain relief under ERISA § 409); § 409, 29 U.S.C. § 1109 ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan resulting from such breach . . ."); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) ("There can be no disagreement with the Court of Appeals' conclusion that § 502(a)(2) authorizes a beneficiary to bring an action against a fiduciary who has violated § 409").

**C.  United Owes Fiduciary Duties to Plaintiffs and the Class.**

130.    At all relevant times, United has been responsible for administering Plaintiffs' Plans. As such, United exercises discretionary authority and control over Plan

management and administration. It also exercises discretionary authority and control over the management and disposition of Plan assets. United is a fiduciary with respect to the Plaintiffs' Plans. *See* 29 U.S.C. § 1002(21)(A)(i) ("[A] person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets").

131.   United owes fiduciary duties to the Plaintiffs and the Class to administer their Plans according to ERISA and Plan terms. On information and belief, at least some Plans explicitly name United as a fiduciary, with regards to claims administration.

132.   The fiduciary duties imposed on United by ERISA are among "the highest known to the law." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)).

133.   As a fiduciary, United must act in accordance with Plan documents and "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the *exclusive purpose* of . . . providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A)(i)–(ii) (emphasis added). This "exclusive purpose" fiduciary duty is often referred to as ERISA's "duty of loyalty."

134.   ERISA also prohibits a plan fiduciary from dealing with the assets of the plan in the fiduciary's own interest, ERISA § 406(b)(1) (cited as 29 U.S.C. § 1106(b)(1)); acting on behalf of a party whose interest is adverse to those of the Plan or its participants, ERISA § 406(b)(2) (cited as 29 U.S.C. § 1106(b)(2)); or from causing a Plan to directly or

indirectly transfer assets of the Plan to or for the benefit of a "party in interest" such as United, ERISA § 406(a)(1)(D), (cited as 29 U.S.C. § 1106(a)(1)(D)).

135.   While plan administrators like United may be fiduciaries of multiple plans, "each plan is a separate entity." *Peterson v. UnitedHealth Group, Inc.*, 913 F.3d 769, 776 (8th Cir. 2019) (quoting *Standard Ins. Co. v. Saklad*, 127 F.3d 1179, 1181 (9th Cir. 1997)). United's fiduciary's duties run separately to each of the Plans it administers.

### D.  United's Cross-Plan Offsets Breach ERISA § 404's Duty of Loyalty.

136.   United's cross-plan offsets breach ERISA's duty of loyalty, because United takes and uses Plan money for non-Plan purposes. In doing so, United does not administer the Plans "for the exclusive purpose of . . . providing benefits" to Plaintiffs and other Plan participants, ERISA § 404(a), but rather to serve its own financial interests and either recoup its own losses, caused by asserted overpayments by fully-insured Plans, or avoid losses or financial penalties that accrue when United makes an asserted overpayment on behalf of a self-insured Plan.

137.   The DOL is the agency responsible for enforcement of ERISA, and its views on the statute are entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *See Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 18 (2004) (affording *Skidmore* deference to DOL Advisory Opinions).

138.   The DOL has repeatedly found that cross-plan offsets violate ERISA's duty of loyalty. As early as 1977, three years after ERISA was enacted, the DOL opined that cross-plan offsets violated ERISA § 404(a). In a 1977 Advisory Opinion, the DOL found that "if the plan pays amounts to another plan to reimburse the other plan for erroneous

payments," that would be a violation of ERISA § 404(a) because "such reimbursement would not constitute a use of plan assets for the exclusive purpose of providing benefits to participants in the plan." Office of Pension and Welfare Benefit Programs, Op. No. 77–34, 1977 WL 5397, at *4 (Apr. 4, 1977).

139.   Four years later, the DOL cautioned against using assets of one plan to pay benefits under other plans, stating that "a separate accounting of the interest of each plan in such vehicle must be maintained in order to avoid using the assets of one such plan to pay benefits to participants and beneficiaries of another such plan in contravention of section[ ] . . . 404(a)(1)(A)." U.S. Dep't of Labor Office of Pension and Welfare Benefit Programs, Op. No. 81-62A, 1981 WL 17785, at (Jul. 21, 1981).

140.   As recently as 2017 in *Peterson*, the DOL filed an amicus brief in the Eighth Circuit and similarly opined that "United violated its duty of loyalty under ERISA section 404 and engaged in a prohibited transaction in violation of ERISA section 406, by cross-plan offsetting." Brief for the Secretary of Labor as Amicus Curiae in Support of Plaintiffs-Appellees, *Peterson v. UnitedHealth Group, Inc.* (8th Cir. Sept. 7, 2017) 2017 WL 3994970, at *9.

141.   The DOL has had a considered and consistent opinion over the last twenty years that cross-plan offsets violate ERISA's duty of loyalty. This should "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore*, 323 U.S. at 140.

142.    United breaches its duty of loyalty by engaging in cross-plan offsets, because it misappropriates assets from Plaintiffs' Plans for non-Plan purposes, reducing the assets available to provide healthcare benefits to Plan participants.

143.    Because United breaches its duty of loyalty when it takes cross-plan offsets and misappropriates contributions for non-plan purposes, Plaintiffs have suffered losses from the contributions they have made to Plaintiffs' Plans.

144.    Because United breaches its duty of loyalty when it takes cross-plan offsets, there are fewer Plan assets available to provide healthcare benefits to Plan participants, causing harm to Plaintiffs.

145.    Because United breaches its duty of loyalty when it takes cross-plan offsets, Plans must use additional or replacement Plan assets to pay benefits.

146.    Plaintiffs may be placed in financial jeopardy due to balance bill liability, because United breaches its duty of loyalty when it takes cross-plan assets. Balance bill liability can lead to other adverse financial impacts, including a poor credit score.

## E. **United's Cross-Plan Offsets Are Prohibited Transactions Under ERISA § 406(b)(1).**

147.    ERISA § 406(b)(1) prohibits a party in interest from "deal[ing] with the assets of the plan in his own interest or for his own account." Generally, it "prohibits fiduciaries from managing the Plan in their own interests." *Krueger v. Ameriprise Fin., Inc.*, No. 11–cv–02781, 2012 WL 5873825, at *15 (D. Minn. Nov. 20, 2012).

148.    United, acting as a fiduciary to each of the Plans it administers, engages in a prohibited transaction in violation of ERISA § 406(b)(1) each time it diverts self-insured

Plan assets to United's own account to resolve an asserted overpayment by a Plan fully insured by United.

149.    Because United breaches its fiduciary duty by engaging in transactions prohibited by § 406(b)(1), Plaintiffs' Plans have suffered financial losses.

150.    This breach of fiduciary duty harms Plaintiffs' Plans, because Plan assets were misappropriated for non-Plan purposes, reducing assets available to provide healthcare benefits to Plan participants.

151.    Because United breaches its fiduciary duty by engaging in transactions prohibited by ERISA § 406(b)(1), Plaintiffs are harmed, because their contributions are misappropriated for non-Plan purposes.

152.    Because United breaches its fiduciary duty by engaging in transactions prohibited by ERISA § 406(b)(1), Plaintiffs have been harmed, because there are fewer Plan assets available to provide healthcare benefits to them and other participants in Plaintiffs' Plans.

153.    Because United breaches its fiduciary duty by engaging in transactions prohibited by ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), Plans must use additional or replacement Plan assets to pay benefits.

154.    Because United breaches its fiduciary duty by engaging in transactions prohibited by § 406(b)(1), Plaintiffs may be placed in financial jeopardy and incur balance bill liability.

**F. United's Cross-Plan Offsets Are Prohibited Transactions Under ERISA § 406(b)(2).**

155.    ERISA § 406(b)(2) prohibits a fiduciary from acting on behalf of a party whose interest is averse to the interests of the plan or plan participants in transactions with the plan. In short, a fiduciary cannot represent both sides in a transaction between a plan and another party, even if that other party is another plan to which it is a fiduciary. *See Cutaiar v. Marshall*, 590 F.2d 523, 530 (3d Cir. 1979) (fiduciary which permitted pension fund to issue loan to welfare plan committed *per se* § 406(b)(2) violation).

156.    United, acting as a fiduciary to each of the Plans it administers, engages in a prohibited transaction in violation of ERISA § 406(b)(2) when it diverts one Plan's assets to another Plan to resolve an asserted overpayment, because United cannot represent both sides of that transaction.

157.    Plaintiffs' Plans have suffered financial losses, because United breaches its fiduciary duty when it engages in transactions prohibited by § 406(b)(2).

158.    Because United engages in prohibited transactions in violation of § 406(b)(2), Plaintiffs' Plans suffers further harm, because the assets are misappropriated for non-Plan purposes, reducing the assets available to provide healthcare benefits to Plan participants, including Plaintiffs.

159.    Plaintiffs' contributions have been misappropriated for non-Plan purposes because United engages in prohibited transactions in violation of § 406(b)(2), causing Plaintiffs harm.

160.    Because United breaches its fiduciary duty by engaging in prohibited transactions in violation of ERISA § 406(b)(2), Plaintiffs suffer harm, because there are fewer Plan assets available to provide healthcare benefits to them and other participants in the United Plans.

161.    Because United breaches its fiduciary duty by engaging in transactions prohibited by ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2), Plans must use additional or replacement Plan assets to pay benefits.

162.    Plaintiffs may be placed in financial jeopardy and incur balance bill liability because United engages in prohibited transactions in violation of ERISA § 406(b)(2) when it takes cross-plan offsets.

### G. United's Cross-Plan Offsets Are Prohibited Transactions Under ERISA § 406(a)(1)(D).

163.    ERISA § 406(a)(1)(D), prohibits a plan fiduciary from engaging in a "transaction [that] constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."

164.    United is a "party in interest" to the Plans it administers, because it is a fiduciary under 29 U.S.C. § 1002(14)(A),[3] and a service provider under 29 U.S.C. § 1002(14)(B),[4] to those Plans.

---

[3] ERISA defines "[t]he term 'party in interest'" to include "any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan." 29 U.S.C. § 1102(14)(A).

[4] ERISA further includes "a person providing services to such [employee benefit] plan" as a "party in interest." 29 U.S.C. § 1102(14)(B).

165.   United's cross-plan offsets against Plaintiffs' Plans were prohibited transactions under ERISA § 406(a)(1)(D) because United, a fiduciary, directly transferred assets of self-insured Plans to itself, a party in interest, to recoup asserted overpayments it made to providers of health services to participants in fully-insured plans.

166.   In essence, United took self-insured Plan dollars and put them in its own pocket, "a direct . . . transfer [of plan assets] to . . . a party in interest." ERISA § 406(a)(1)(D).

167.   Plaintiffs' Plans have suffered financial losses because United breaches its fiduciary duty by engaging in prohibited transactions in violation of ERISA § 406(a)(1)(D).

168.   Because United engages in prohibited transactions in violation of ERISA § 406(a)(1)(D), assets from Plaintiffs' Plans have been misappropriated for non-Plan purposes, reducing the assets available to provide healthcare benefits to Plaintiffs and participants in Plaintiffs' Plans.

169.   Because Plaintiffs' Plans' contributions have been misappropriated for non-Plan purposes, United breaches its fiduciary duty when it engages in transactions prohibited by § 406(a)(1)(D).

170.   Plaintiffs suffer harm when United engages in prohibited transactions in violation of ERISA § 406(a)(1)(D), because cross-plan offsetting leaves fewer Plan assets available to provide healthcare benefits to Plaintiffs and other Plan participants.

171.   Because United breaches its fiduciary duty by engaging in transactions prohibited by ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), Plans must use additional or replacement Plan assets to pay benefits.

172.    Participants may be placed in financial jeopardy and incur balance bill liability when United engages in cross-plan offsetting, in violation of ERISA § 406(a)(1)(D).

## VI.    CLASS ALLEGATIONS

173.    Plaintiffs brings their claims on behalf of a class (the "Class") defined as:

All participants and beneficiaries of self-insured ERISA-governed employee welfare benefit Plans administered by United whose Plan benefits were taken, in whole or in part, by United to offset a purported debt owed to a separate Plan, during the time beginning six years prior to the filing date of this action to final judgment.

174.    The proposed Class seeks relief for itself and on behalf of the Class's Plans for losses to the Class's Plans caused by United's cross-plan offsets.

175.    Class certification is appropriate under Rule 23(b)(1) and (b)(2).

176.    **Numerosity.** The Class satisfies the numerosity requirement of Fed. R. Civ. P. 23(a)(1) because, upon information and belief, it is comprised of thousands of persons. The number of Class members is so large that joinder of all its members is impractical.

177.    **Commonality.** This case satisfies the requirements of Fed. R. Civ. P. 23(a)(2) because it presents numerous common questions of law and fact which predominate over any questions affecting individual Class members, including but not limited to:

a.   Whether United took cross-plan offsets;

b.   Whether United breached its fiduciary duty of loyalty to the Class under ERISA § 404 by taking cross-plan offsets against self-insured Plans;

c.   Whether United engaged in prohibited transactions under ERISA § 406 by taking cross-plan offsets;

    d.   Whether United violated the ERISA Claims Regulation when taking cross-plan offsets; and

    e.   Whether and to what extent United is precluded from contesting certain facts or legal conclusions decided in *Peterson v. UnitedHealth Group* that are relevant to this action.

178.   **Typicality.** Plaintiffs' claims are typical of the claims of the Class under Fed. R. Civ. P. 23(a)(3) because (a) United's cross-plan offset practice is implemented on an enterprise-wide scale, affecting all Class members equally; (b) Plaintiffs' claims for breach of fiduciary duty under ERISA §§ 502(a)(2) and (a)(3) are the same as claims which could be brought by any other Class member; (c) all of the Class members were injured and continue to be injured in the same manner by United's breaches of fiduciary duty; (d) the equitable and other relief which Plaintiffs seek would affect all Class members equally; and (e) Plaintiffs have no interests that are adverse to the Class.

179.   **Adequacy.** The requirements of Fed. R. Civ. P. 23(a)(4) are satisfied, because Plaintiffs will fairly and adequately protect the interests of the Class and is committed to the vigorous representation of the Class and prosecution of these claims.

180.   Plaintiffs' retained counsel, Cohen Milstein Sellers and Toll PLLC ("Cohen Milstein"), William K. Meyer, and Zimmerman Reed are experienced in class action and ERISA litigation.

181.   Plaintiffs' counsel have agreed to advance the costs of the litigation contingent upon the outcome. Counsel are aware that no fee can be awarded without the Court's approval.

182.    A class action is the superior method for the fair and efficient adjudication of this controversy. Joinder of all members of the Class is impracticable. The losses suffered by some of the individual members of the Class may be small, and it would be impracticable for individual members to bear the expense and burden of individual litigation to enforce their rights.

183.    Moreover, Defendants, as fiduciaries of its Plans, were and are obligated to treat all Class members similarly, because ERISA imposes uniform standards of conduct on fiduciaries. Plaintiffs are unaware of any difficulty in the management of this action as a class action.

184.    The Class may be certified under Rule 23(b).

- **Rule 23(b)(1) requirements.** This ERISA action for breach of fiduciary duty is a classic 23(b)(1) class action. Rule 23(b)(1) is satisfied if the prosecution of "separate actions by . . . individual members of the Class would create a risk of (A) inconsistent or varying adjudications with respect to individual Class members that could establish incompatible standards of conduct" for United, or (B) adjudications that, "as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications." Fed. R. Civ. P. 23(b)(1).

- **Rule 23(b)(2) requirements.** Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ.

P. 23(b)(2). Here, the challenged conduct at issue—taking cross-plan offsets that are contrary to United's fiduciary duties under ERISA—not only can be, but must be, enjoined or declared unlawful either to all of the Class members or to none of them. Final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

## VII.    CAUSES OF ACTION

### Count I

### ERISA § 502(a)(2): Breach of Fiduciary Duty of Loyalty, in Violation of ERISA § 404, 29 U.S.C. § 1104

185.    Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 184 as if fully set forth herein.

186.    At all relevant times, Defendants were fiduciaries of Plans. ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

187.    As fiduciaries, Defendants have a duty to act "solely in the interest of the participants and beneficiaries" of the Plans they serve and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan," in accordance with ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

188.    United breached this duty of loyalty when it used assets of Plaintiffs' and the Class's self-insured Plans for the non-Plan purpose of resolving a disputed debt to a different Plan, and not providing benefits to Plan beneficiaries.

189.    This breach of the duty of loyalty was exacerbated when United used cross-plan offsets to take the assets of self-insured Plans to recover alleged overpayments made on behalf of United's fully-insured Plans, a practice which benefited United at the expense of the self-insured Plans and their beneficiaries.

190.    As a direct and proximate result of the above breach of fiduciary duty, United's self-insured Plans have lost hundreds of millions of dollars, for which all Defendants are jointly and severally personally liable.

191.    Plaintiffs seek an order under ERISA §§ 502(a)(2) and 409, 29 U.S.C. §§ 1132(a)(2) and 1109, requiring the Defendants to restore all losses to United's self-insured Plans and to disgorge any ill-gotten profits or fees caused by their violations of ERISA § 404, and to provide any other relief set forth in the Prayer for Relief or that is just and proper.

## Count II

### ERISA § 502(a)(2): Breach of Fiduciary Duty
### by Engaging in Self-Dealing Transactions
### Prohibited by ERISA § 406(b)(1))

192.    Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 184 as if fully set forth herein.

193.    At all relevant times, Defendants were fiduciaries of the Plans. ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

194.    As fiduciaries, Defendants have a duty to avoid "deal[ing] with the assets of the plan in [their] own interest or for [their] own account." ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1). United's use of self-insured Plan assets to recoup alleged overpayments by

fully-insured Plans constitutes a breach of this fiduciary duty and a prohibited transaction, because United takes Plan assets for its own account and in its own interest, instead of paying benefits to Plan participants and beneficiaries.

195.    As a direct and proximate result of the above breach of fiduciary duty and prohibited transaction, self-insured Plans have lost hundreds of millions of dollars, for which all Defendants are jointly and severally personally liable.

196.    Under ERISA §§ 502(a)(2) and 409, 29 U.S.C. §§ 1132(a)(2) and 1109, Plaintiffs seek an order requiring the Defendants to restore all losses to self-insured Plans and to disgorge any ill-gotten profits or fees caused by their violations of ERISA § 406(b)(1), and to provide any other relief set forth in the Prayer for Relief or that is just and proper.

### Count III

#### ERISA § 502(a)(2): Breach of Fiduciary Duty by Representing Both Sides of the Transactions, in Violation of ERISA § 406(b)(2)

197.    Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 184 as if fully set forth herein.

198.    At all relevant times, Defendants were fiduciaries of Plans. ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

199.    ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2), prohibits a fiduciary from representing both sides in a transaction between a plan and another party, even if that other party is another plan to which it is a fiduciary.

200.     United, acting as a fiduciary to each of the Plans it administers, engages in a prohibited transaction in violation of ERISA § 406(b)(2) when it diverts one Plan's assets to another Plan to resolve an asserted overpayment, because United cannot represent both sides of that transaction.

201.     As a direct and proximate result of the above breach of fiduciary duty and prohibited transaction, self-insured Plans have lost hundreds of millions of dollars, for which all Defendants are jointly and severally personally liable.

202.     Under ERISA §§ 502(a)(2) and 409, 29 U.S.C. §§ 1132(a)(2) and 1109, Plaintiffs seek an order requiring the Defendants to restore all losses to self-insured Plans and to disgorge any ill-gotten profits or fees caused by their violations of ERISA § 406(b)(2), and to provide any other relief set forth in the Prayer for Relief or that is just and proper.

## Count IV

### ERISA § 502(a)(2): Breach of Fiduciary Duty by Transferring Plan Assets to a Party-in-Interest, in Violation of ERISA § 406(a)(1)(D)

203.     Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 184 as if fully set forth herein.

204.     At all relevant times, United was a fiduciary to the Plans. ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

205.     At all relevant times, United was a "party in interest" with respect to its Plans because it was a fiduciary and service provider to those Plans. ERISA § 3(14)(A)–(B), 29 U.S.C. § 1002(14)(A)–(B).

206.    As fiduciaries, Defendants are prohibited from causing the Plans "to engage in a transaction if [they] know or should know that such transaction constitutes a direct or indirect . . . transfer to . . . a party in interest, of any assets of the plan." ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D). United's use of self-insured Plans' assets to offset overpayments by fully-insured Plans is a breach of this fiduciary duty and a prohibited transaction, because United caused Plans to transfer Plan assets designated for benefit payments to United's pockets.

207.    As a direct and proximate result of the above breach of fiduciary duty and prohibited transaction, self-insured Plans have lost hundreds of millions of dollars, for which all Defendants are jointly and severally personally liable.

208.    Under ERISA §§ 502(a)(2) and 409, 29 U.S.C. §§ 1132(a)(2) and 1109, Plaintiffs seek an order requiring the Defendants to restore all losses to self-insured Plans and to disgorge any ill-gotten profits or fees caused by their violations of ERISA § 406(a)(1)(D), and to provide any other relief set forth in the Prayer for Relief or that is just and proper.

## Count IV

### ERISA § 503: Failure to Establish
### and Maintain Reasonable Claims Procedures

209.    Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 176, as if fully set forth herein.

210.    At all relevant times, United was a fiduciary to the Plans. ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

211.    United owed Plaintiffs and the Class a duty to provide adequate notice and a full and fair review of cross-plan offsets. ERISA § 503, 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1.

212.    United breached its fiduciary duties to Plaintiffs and the Class by failing to provide adequate notice or a full and fair review of cross-plan offsets, in violation of ERISA § 503, 29 U.S.C. 1133, and the ERISA Claims Regulation, 29 C.F.R. § 2560.503-1.

213.    Plaintiffs and the Class were injured as a result of United's failure to provide adequate notice and a full and fair review of cross-plan offsets, because certain of these offsets resulted in Plaintiffs and Class members not receiving benefits due under the Plan and caused Plaintiffs and Class members to incur balance bill liability.

214.    Under ERISA §§ 502(a)(2) and 409, 29 U.S.C. §§ 1132(a)(2) and 1109, Plaintiffs seek an order requiring the Defendants to restore all losses to self-insured Plans and to disgorge any ill-gotten profits or fees caused by their violations of ERISA § 503, and to provide any other relief set forth in the Prayer for Relief or that is just and proper.

## Count V

### ERISA § 502(a)(3): Additional Relief for Breaches of Fiduciary Duty

215.    Plaintiffs re-allege and incorporate by reference the allegations of paragraphs 1 through 184 as if fully set forth herein.

216.    United breached its fiduciary duties to Plaintiffs and the Class when it took cross-plan offsets against self-insured Plans, as aforesaid.

217.    Plaintiffs and the Class are entitled to an injunction or other appropriate equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) to redress United's violations of ERISA or to enforce any provisions of ERISA or Plans administered by United.

## VIII.    PRAYER FOR RELIEF

218.    Plaintiffs, on behalf of a Class consisting of all participants and beneficiaries in each self-insured Plan administered by United, whose Plan assets were used for cross-plan offsetting, for themselves and their Plans, respectfully request that the Court award the following relief:

A.    Certify the Class, appoint Plaintiffs as Class Representative, and appoint Cohen Milstein Sellers and Toll PLLC, William K. Meyer, and Zimmerman Reed, Plaintiffs' counsel, as Class Counsel;

B.    Declare that United breached its fiduciary duties to Plaintiffs and the Class by using cross-plan offsets to seize Plan assets for non-Plan purposes, in violation of ERISA's duty of loyalty, ERISA § 404(a), 29 U.S.C. § 1104(a), and in further violation of ERISA's bar against prohibited transactions, ERISA § 406, 29 U.S.C. § 1106;

C.    Declare that United's use of cross-plan assets violates ERISA's requirement that Plans must establish and maintain reasonable claims procedures, ERISA § 503, 29 U.S.C. § 1133.

D.    Declare that United's cross-plan offsets against Plaintiffs' Plans and the Plans of the Class did not constitute payment of their claims for covered services under their Plans;

48

E.  Declare that any Plan provisions which purport to authorize cross-plan offsets are void and unenforceable as a matter of law;

F.  Permanently enjoin United from taking cross-plan offsets;

G.  Order Defendants to provide all accountings necessary to determine the amounts Defendants must remit to the Plans under ERISA § 409(a), 29 U.S.C. § 1109(a), to restore losses and to disgorge any profits fiduciaries obtained from the use of Plan assets or other violations of ERISA §§ 404, 406, or 503, 29 U.S.C. §§ 1104, 1106, or 1133;

H.  Order Defendants to (a) personally make good to the Plans all money taken to fund cross-plan offsets and (b) personally restore to the Plans any and all profits realized by United on account of its cross-plan offsets;

I.  Order United, as a party in interest, to restore to the Plans all assets transferred to United and to disgorge any profits obtained through the use of Plan assets transferred to United, plus pre-judgment and post-judgment interest, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3);

J.  Order United to use all money returned or restored to its Plans pursuant to judgment in this action for the "exclusive purpose" of providing benefits to Plan beneficiaries and to defray reasonable costs of Plan administration;

K.  Order United to provide an accounting to this Court and Class Counsel of how all money returned or restored to its Plans pursuant to judgment in this action;

L.  Award to the Plaintiffs and the Class their attorneys' fees and costs under ERISA § 502(h), 29 U.S.C. § 1132(h), and/or the common fund doctrine;

M.     Order the payment of interest to the extent it is allowed by law; and

N.     Order other equitable or remedial relief as the Court deems appropriate.


October 23, 2020                    Respectfully submitted,

                                    **ZIMMERMAN REED LLP**

                                    *s/ June P. Hoidal*

                                    Carolyn G. Anderson (MN No. 275712)
                                    June P. Hoidal (MN No. 033330X)
                                    Ian F. McFarland (MN No. 392900)
                                    1100 IDS Center, 80 South 8th Street
                                    Minneapolis, Minnesota 55402
                                    Tel: (612) 341-0400
                                    Carolyn.Anderson@zimmreed.com
                                    June.Hoidal@zimmreed.com
                                    Ian.Mcfarland@zimmreed.com


                                    Karen L. Handorf, *pro hac vice*
                                    Julie S. Selesnick, *pro hac vice*
                                    Sarah D. Holz, *pro hac vice*
                                    **COHEN MILSTEIN SELLERS & TOLL,
                                    PLLC**
                                    1100 New York Ave., N.W. Fifth Floor,
                                    Washington, DC 20005
                                    Tel: (202) 408-4600
                                    khandorf@cohenmilstein.com
                                    jselesnick@cohenmilstein.com
                                    sholz@cohenmilstein.com


                                    William K. Meyer, *pro hac vice*
                                    626 Chestnut Avenue
                                    Towson MD 21204
                                    Tel: (410) 818-3892
                                    wkmlaw644@gmail.com